**SYSTECH ENVIRONMENTAL CORPORATION,**
Petitioner,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
Respondent.

**NATIONAL CEMENT COMPANY OF CALIFORNIA, INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
Respondent.

Nos. 94–70419, 94–70631, 94–70422 and 94–70483.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1994.

Decided May 31, 1995.

---

Richard G. Stoll, Karen M. Wardzinski, Freedman, Levy, Kroll & Simonds, Washington, DC, for petitioner Systech Environmental Corp.

Louis H. Anders, Harri J. Haikala, Joseph W. Letzer, Burr & Forman, Birmingham, AL, for petitioner Nat. Cement Co. of California, Inc.

Karen L. Egbert, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: HUG, CANBY, and HAWKINS, Circuit Judges.

CANBY, Circuit Judge:

The National Cement Company of California and Systech Environmental Corporation petition for review of the Environmental Protection Agency's final decision denying National's application for a RCRA permit to incinerate hazardous waste. EPA denied National's application on the ground that it lacked a certification required by 40 C.F.R. § 270.11. We find EPA's interpretation of section 270.11 to be arbitrary and irrational insofar as it requires an absentee owner of land on which another processes hazardous waste to certify that the RCRA permit application was processed under his direction and supervision. We hold that the representations that were made by Tejon, the absentee landowner in the case at bar, are sufficient to satisfy the requirements of section 270.11. We therefore vacate EPA's Final Decision denying National's application and order EPA to process the application on its merits.

## BACKGROUND

Tejon Ranchcorp owns a large ranch property near Lebec, California, on which it raises cattle. In 1966, Tejon leased a portion of that property to General Portland Cement, Inc., for up to ninety-nine years. Portland built a large cement kiln on the leased property and began its cement-making operations there.

In 1982, Portland initiated a program to heat its kiln in part by burning certain types of liquid industrial waste. The program served the dual purposes of reducing Portland's consumption of fossil fuels and of disposing of hazardous materials that otherwise would require costly storage or disposal. Portland sublet a portion of its leasehold to Systech, which collected waste on the property from outside generators and processed it for incineration in Portland's kiln. The generators paid Systech and Portland to dispose of their waste. In 1987, National purchased the complex from Portland, assuming the

Tejon lease and continuing the arrangement with Systech. At all times, the operation was subject to California state environmental permit requirements.

In August of 1991, National's "supplemental fuels" program came under the ambit of federal regulation for the first time when EPA's Boiler and Industrial Furnace Rule took effect. 40 C.F.R. §§ 266.110, 266.112. EPA consequently required National and other like facilities to apply for hazardous waste management permits pursuant to 42 U.S.C. § 6925(a) (RCRA § 3005(a)) in order to continue their waste incineration programs. Section 3005(e) allowed National to continue operations on an interim basis until EPA reached a final decision on its permit application. National submitted to EPA the final portion of its application in September of 1991.

Section 270 of 40 C.F.R. governs the RCRA permit application process and specifies the contents of the application. Section 270.11(d) requires the applicant to certify that all information in the application is true and that the application was prepared under the applicant's supervision or direction. The section also provides the precise language that the applicant must use in so certifying. In August of 1992, EPA sent National a Notice of Deficiency, stating that its application was incomplete. EPA took the position that Tejon, as owner of the land on which the facility resided, was also required to sign and certify the application. EPA gave National thirty days to remedy the deficiency and complete the application. National requested from EPA and received three lengthy extensions, totalling fourteen months, while it tried unsuccessfully to obtain Tejon's certification.

In October 1993, the Regional Secretary for EPA Region IX issued a Notice of Intent to Deny National's application for lack of Tejon's signature and certification, as required by 40 C.F.R. §§ 270.10(b), 270.11(d). During the comment period, Tejon submitted that it could not provide the certification because it "had no basis to certify the truth, accuracy or completeness of the application" as required by section 270.11(d). National submitted extensive commentary to the effect that: 1) Tejon was not the " 'owner' of a part of the facility" for purposes of section 270; 2) Tejon was in any case not required to certify the truthfulness of the permit application or that it was prepared under Tejon's supervision, under section 270.11(d); and 3) such a requirement would be unduly burdensome to Tejon and National, might be impossible to comply with, and would dictate a result contrary to the policies underlying RCRA.

National nevertheless submitted an "alternative certification" signed by representatives of Tejon. That statement acknowledged Tejon's liability as land owner, but did not track the language in section 270.11 and did not certify the truth of the information in the application. Despite having proposed the alternative language to National in 1992, EPA determined that the substitute Tejon certification did not satisfy section 270.11's requirements. On March 31, 1994, after considering all commentary, EPA issued its decision finding National's application to be incomplete.

National petitioned the Environmental Appeals Board for review of EPA's decision. The Board found that EPA did not clearly err in determining that National's application was incomplete, and denied review. On July 28, 1994, EPA issued its Final Decision denying National's permit.[1]

After the Board denied an August 3 Motion for Reconsideration, National sent still another letter to both the Administrator and the Board, requesting that EPA withdraw its now-final decision. The letter was accompanied by another certification from Tejon that tracked the language of section 270.11(d). The certification, however, contained a disclaimer that EPA determined would nullify the intended effect, and most of the language, of section 270.11(d). For reasons of administrative finality as well as the deficiency in the latest certification, EPA denied the request.

---

1. Tejon ultimately signed National's permit application; EPA's final denial of National's application is based solely on the absence of a valid Tejon certification.

## DISCUSSION

National challenges EPA's regional and final decisions to deny the permit application, as well as its decision denying the motion for rehearing. Specifically, National assigns error to EPA's determinations that: 1) Tejon, as an absentee owner of land on which hazardous waste is processed, is an "owner" for the purposes of RCRA section 3005(a) and thus for both 40 C.F.R. § 270.10, the general RCRA permit application requirements section, and section 270.11, the certification requirement section; and 2) as such an "owner," Tejon may comply with EPA's RCRA certification requirements only by tracking the exact language of 40 C.F.R. § 270.11(d).

Under the Administrative Procedure Act, we must uphold EPA's actions and decisions unless we find them to be " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Northwest Motorcycle Ass'n v. United States Dep't of Agric.,* 18 F.3d 1468, 1471 (9th Cir.1994) (quoting 5 U.S.C. § 706(2)(A)). Under this standard, we will let EPA's decision stand if the evidence before the agency "provided a rational and ample basis" for it. *See id.*

### I. Tejon as an "Owner" Under 40 C.F.R. § 270.10

■ RCRA § 3005(a) requires each owner or operator of a hazardous waste management facility to obtain a permit for treatment, storage or disposal of that waste. 42 U.S.C. § 6925(a). Under 40 C.F.R. § 270.2, an owner is "the owner ... of any facility or activity subject to regulation under RCRA," and a "facility" is defined as "all contiguous land, and structures ... used for treating, storing or disposing of hazardous waste." Although Tejon does not own the structures used for treating the hazardous waste at issue, it does own the contiguous land so used. EPA concluded from this fact and from the plain wording of the regulations that Tejon is an owner of at least part of the "facility" for purposes of RCRA and its permitting requirements.

EPA finds support for its conclusion in its regulatory history. The Agency has made clear in its rule-making process that it considers absentee landlords like Tejon to be "owners" within the meaning of the Act:

> [s]ome facility owners have historically been absentees, knowing and perhaps caring little about the operation of the facility on their property. The Agency believes that Congress intended that this should change and that they should know and understand that they are assuming joint responsibility for compliance with these regulations *when they lease their land to a hazardous waste facility.* Therefore, to ensure their knowledge, the Agency will require the owners to co-sign the permit application....

45 Fed.Reg. 33,155, 33,169 (May 19, 1980) (emphasis added). EPA thus behaves consistently in treating Tejon as an owner.

Pursuant to section 3004(a)(7) of RCRA, EPA promulgated 40 C.F.R. § 270 to establish the specific permit application requirements for owners and operators. Section 270.10(a) mandates that any person required to have a permit must submit an application. As an owner, then, Tejon would ordinarily be required so to comply. Section 270.10(b), however, contains an exception to this rule, which applies here: "When a facility ... is owned by one person but is operated by another person, it is the operator's duty to obtain a permit, except that *the owner must also sign the permit application.*" 40 C.F.R. § 270.10(b) (emphasis added).

EPA's interpretation of section 270.10 is clear. All owners and operators must have permits. An owner may under section 270.10(a) apply separately for a permit, or it may simply sign the application prepared by the operator under section 270.10(b); but one way or another, the owner must have a permit. *Accord In re Hawaiian Western Steel Ltd.,* RCRA (3008) Appeal No. 88–2 (Nov. 17, 1988). Therefore Tejon, *as an owner,* must at a minimum sign National's permit application per section 270.10.

EPA's conclusion to this effect is reasonable in view of the plain meaning of the regulation's words. Its interpretation also supports Congress's stated policy objective that owners share in the responsibility of compliance with RCRA standards. *See* H.R.Rep. No. 1491, 94th Cong., 2d Sess. at

27–28 (1976) ("It is the intent of the Committee that responsibility for complying with the regulations ... rest equally with owners and operators of hazardous waste treatment, storage or disposal sites and facilities where the owner is not the operator."). In light of the plain language of the regulations, the legislative history behind RCRA, and the Agency's reliance on its own explanations during the rule making process, EPA's decision to treat Tejon as an owner within the meaning of the Act and its commensurate regulations is quite rational.

**II. Tejon's Compliance with the Certification Requirements of 40 C.F.R. § 270.11(d).**

■ Section 270.11 of 40 C.F.R. governs the signing of all RCRA permit applications. Section 270.11(d) dictates that all signatories of the permit application shall make the following certification:

> I certify under penalty of law that *this document and all attachments were prepared under my direction or supervision* in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violation.

40 C.F.R. § 270.11(d) (emphasis added). It is readily apparent that this regulation is not well-adapted to the situation where an absentee landowner is signing an application prepared by the operator, who in turn must certify that the application was prepared under his direction or supervision.

When contemplating the regulation, EPA has identified its policy reasons for requiring an absentee owner's signature on, and certification of, a permit application. EPA acknowledged Congress's intent that the operator notify the owner of the nature and extent of the hazardous waste activity occurring on his property. 47 Fed.Reg. 32,038, 32,039 (July 32, 1982). The Agency also noted that an owner must be made aware that "EPA considers him jointly and severally responsible for compliance with EPA's regulations and permit requirements." *Id.*

In the present case, EPA maintains that because Tejon must sign the application, it must also provide the above certification *verbatim.* National points out that the permit application was not prepared under Tejon's "direction or supervision," and argues strenuously that EPA's is an unreasonable interpretation because it forces Tejon to attest falsely to having directed and supervised the application process. For this and other reasons that we explain below, we agree.

As we have already stated, we find reasonable EPA's decisions to treat Tejon as an owner of a hazardous waste management facility and to require of Tejon any actions necessary of an owner under the applicable regulations. Such requirements certainly could include Tejon's provision of a certification that satisfies the underlying objectives of section 270.11(d).[2] A simple certification setting forth the owner's knowledge of the activity on his property and his liability for that activity would satisfy both EPA's and Congress's objectives, and if EPA were to require such a certification, we would have no difficulty in sustaining the Agency's decision.

On the other hand, the blind application of section 270.11(d) as it is currently written, to require an absentee owner either to undertake the burdensome task of co-supervising the operator's application process or to commit perjury, would produce results that are both irrational and perverse. In addition to

2. In 1982, EPA articulated the purposes of the owner certification requirement: "To ensure this knowledge [of the nature and extent of activity on his property and that he is jointly responsible, in the eyes of EPA, for permit and regulation compliance], the owner is required to sign the permit application and certify familiarity with the information contained therein." 47 Fed.Reg. 32,038, 32,039 (July 23, 1982).

mandating a falsehood in the present case,[3] EPA's insistence that Tejon use in its certification the language of section 270.11(d) serves not one of the legitimate objectives of the regulation. Attesting that it supervised or directed the preparation of the permit application does not make Tejon any more aware of the "nature and extent" of National's hazardous waste management activity than, for example, securing an expert to monitor the application process, and then certifying that to the best of its knowledge, Tejon believes the information in the application to be true.[4] Nor does such a requirement serve to make Tejon more aware of its liability to EPA for National's activities.

Further, the record amply suggests that EPA recognized the irrationality of the situation in which it placed companies like National and Tejon. In discussing a proposed relaxation of the certification language for absentee owners of hazardous waste facility sites, EPA recited the difficulties that non-owner operators historically have had in obtaining absentee owners' signatures and certifications for their permit applications, and the burdens inuring to owners who attempted to comply with the current certification language.[5] EPA concluded by recommending a much less demanding certification from absentee landowners. No one has explained

to us why this proposal was never adopted, but it was not.

In February of 1992, EPA in fact proposed for Tejon an alternate certification which accommodated the above difficulties. In it, Tejon would acknowledge its joint and several liability for compliance with RCRA and permit requirements, and would avoid any assertion concerning the truth of the application's contents or that Tejon supervised or directed preparation of the application.[6] Tejon did not immediately sign or submit the alternate certification because at the time it was engaged in negotiations for an outright sale of the property to National, which sale would have obviated the need for Tejon's participation in the permitting process. The sale negotiations eventually failed.

Two years later, in February of 1994, National finally submitted an "alternative" certification signed by Tejon and substantially identical to that proposed by EPA. EPA inexplicably retreated from its position of February 1992, and rejected the certification because it did not conform to the exact requirements of section 270.11(d).

■ EPA's interpretation of section 270.11(d) places a heavy burden on absentee owners, and in return advances none of the stated policy objectives that justify the regu-

---

3. We find unconvincing the views of the Environmental Appeals Board that an owner can certify that the application was prepared under his direction and supervision when the operator provides the "main" direction and supervision. Tejon cannot be faulted for refusing to certify to language the plain meaning of which is necessarily untrue.

4. Although we hold in this case that Tejon's version of a certificate is sufficient, nothing in our decision precludes EPA from proposing a regulation requiring absentee landowners to certify on "information and belief" that it believes the application to be true.

5. "The Agency agrees that this certification can be quite burdensome for owners who are nto [sic] also operators. In large corporations and government agencies, it may be impossible for the person signing the permit application as an owner but not an operator, to personally examine every permit application, or to question all the individuals responsible for obtaining the information. Therefore, EPA is proposing an alternate certification ... that may be used by an owner when the owner and operator are not the same person."

47 Fed.Reg. 32,038, 32,040–41 (July 23, 1982).

6. The exact language of EPA's alternate certification is as follows:

I certify under penalty of law that I understand that this application is submitted for the purpose of obtaining a permit to operate the facility described in the application. Tejon Ranchcorp, the landowner, [and] National Cement Company of California, Inc., the lessee of the land and owner of certain fixtures and equipment located thereon ... are jointly and severally responsible for compliance with by applicable provision of RCRA, its implementing regulations and any permit *issued pursuant* to the application and those regulations. Although Tejon Ranchcorp is the owner of the fee interest in the land underlying the facility, the facility is operated by a subtenant of the lessee of Tejon Ranchcorp under a lease entered into in 1966 with a lease term (including optional extensions) of 99 years.

This proposed language would relax the certification requirement even further than we would deem necessary, as it does not require any due diligence, or even a good faith belief in the truth of the application's contents, on Tejon's part.

lation in the first place. In light of these facts, EPA's position does not meet the standards of the Administrative Procedure Act. We invalidate as arbitrary and irrational EPA's decision that section 270.11(d) requires an owner of land on which a hazardous waste management facility operates to certify that the permit application was prepared under his direction or supervision, where that owner is not also the facility operator. In addition, we hold that Tejon, through its submission of the February 24, 1994 alternate certification, and its employment of various expert consultants to evaluate National's permit application, has satisfied the requirements of section 270.11(d) by demonstrating adequate knowledge of the nature and extent of the hazardous waste management activity on its property and acknowledging its liability under RCRA and the attendant permitting requirements. We therefore vacate the Agency's Final Decision and order EPA to continue processing National's permit application on its merits.

Our disposition of the previous issues renders moot National's and Systech's argument concerning EPA's decision to deny National's request to withdraw its Final Decision of August 15, 1994. We therefore do not decide that issue.

PETITION FOR REVIEW GRANTED; ORDER VACATED; REMANDED.